IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| **RICHARD D. SPARKS** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | |
| § | **CIVIL ACTION NO. L-04-112** |
| **MICHEAL CHERTOFF,** § | |
| **Secretary, Department of Homeland Security** § | |
| § | |
| **Defendant.** § | |

## MEMORANDUM & ORDER

Pending before this Court is Defendant's Motion for Summary Judgment [Doc. No. 24]; Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. No. 27] and Defendant's Reply to Plaintiff's Response [Doc. No. 28]. Upon due consideration of the pleadings, summary judgment evidence[1] testimony and applicable authorities, Defendant's Motion for Summary Judgment is hereby GRANTED.

---

[1] The Court notes that in support of their motion for summary judgment, defendants included EEOC findings, testimony and affidavits in this case. A report or determination from the EEOC is not binding on a subsequent decision by a District Court: "in Title VII litigation, the district court reviews the evidence de novo, independent of any determination by the EEOC." *Dickerson v. Metro. Dade County*, 659 F.2d 574, 579 (5th Cir. Oct. 1981); *see also Hamilton v. Texas Dep't of Transp,* 206 F.Supp.2d 826 (S.D. Tex. 2001)(An EEOC determination is not binding on a District Court). Additionally, "when the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable EEOC letter of determination does not create one." *Simms v. Oklahoma*, 165 F.3d 1321 (10th Cir. 1999); *accord Bynum v. Fort Worth Indep. Sch. Dist.*, 41 F.Supp.2d 641 (N.D. Tex. 1999); *accord Williams v. Aviall Services, Inc.*, 2003 WL 21018567 (N.D.Tex. Feb. 12, 2003). However, reports from the EEOC are "admissible for the purpose of deciding a motion for summary judgment." *Radcliff v. Wal-Mart Stores, Inc.*, 2002 WL 1042116 at *1 n. 1(N.D. Tex. May 21, 2002); *accord Bynum,* 41 F.Supp.2d; *accord Sanders v. Sybra, Inc.* 2002 WL 220062 (N.D.Tex Feb. 11, 2002).

**I.      Factual Background**

This lawsuit arises out of an offer of employment to the Plaintiff by the customs attaché officer in Sao Paulo, Brazil, which was subsequently rescinded; allegedly because of Plaintiff's gender, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* (hereinafter "Title VII").

In 2002, Plaintiff was employed by the Department of Homeland Security (hereinafter "DHS") as a United States Customs Inspector in Laredo, Texas. On May 10, 2002, the Office of International Affairs of the United States Customs Service, posted an opening for the aforementioned position. The opening was classified as a lateral reassignment position. Pursuant to the job announcement, Plaintiff submitted an Optional Application for Federal Employment (Form OF-612) and was interviewed for the position by Mr. Velez, Customs Attachè for the United States Consulate in Brazil. On June 5, 2002, Mr. Velez sent a message Mr. Lozada; who was then the U.S. Customs Director of Foreign Operations in Washington, DC, informing him that he had "selected Richard Douglas Sparks as the staff assistant for his office," and requested that Mr. Lozada "initiate the personnel process to transfer Mr. Sparks to this office as the Staff Assistant." ( Def.'s Summ. J. Ex. G .) Mr. Lozada, despite having some concerns about qualifications, signed off on Mr. Velez's 'selection' and passed on Plaintiff's application to Personnel Relations Management (hereinafter "PRM") for a qualification review. (Def.'s Reply Summ. J . Ex. A at 241-3)

HRM is required to make a qualification review before an applicant can be officially selected for any position within Foreign Operations.(Def.'s Summ. J. Ex. H at 1.)  Under these circumstances especially, a qualification review was necessary because Plaintiff was a customs

inspector classified as a GS-1890-07; although it is undisputed that during the pendency of Plaintiff's application, on July 2, 2002, he became eligible for a GS-1890-09 classification, and was applying for a lateral reassignment position that was not in the same series as his current position and was classified as a GS-301-09 position. (Def.'s Summ. J. Ex. E, F, H at 2.)  Utilizing the Qualification Standards Manual published by the Office of Personnel Management and Plaintiff's application, HRM determined that Plaintiff did not meet the criteria for the lateral position.  In August of 2002, unbeknownst to Plaintiff, HRM re-posted the vacancy, this time as a Merit Promotion Vacancy. (Def.'s Summ. J. Ex. H at 3.)  Plaintiff was never told he lacked the proper qualifications and was never given the opportunity to file an addendum to his application. (Pl.'s Summ. J. Resp. p. 3.)  In fact, Plaintiff found out in October 2002 that the job was not his from his travel agent.  (Pl.'s Summ. J. Resp. Ex. 1 at 2.)

      Disgrunted over the handling of his application, Plaintiff filed a complaint of employment discrimination on November 26, 2002 with the Department of Treasury; which came under the auspices of DHS on March 1, 2003, claiming he was discriminated against with regards to his non-selection for the Brazil position on account of his race, age and sex.  Plaintiff dropped his race and age discrimination claims and his sex discrimination claim was heard by an Equal Employment Opportunity Commission (hereinafter "EEOC") Administrative Judge (hereinafter "AJ") on November 5, 2003.  The AJ issued a decision on November 10, 2003 and found that Plaintiff had not established that he was discriminated against because of his sex.  Plaintiff appealed the AJ's decision to no avail; the appellate arm affirmed on May 4, 2004.  Plaintiff filed this lawsuit on August 5, 2004.

## II.     Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The initial burden, borne by the moving party, requires a showing to the Court of the basis for the motion, as well as an identification of the portions of the record "which [the moving party] believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654 (1962)).

Once a moving party has met its burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586.  If an adverse party completely fails to make a showing sufficient to establish an essential element of that party's case on which they will bear the burden of proof at trial, then all other facts are rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322-323.

However, as Rule 56 "does not impose a duty on the district court to sift through the record in search of evidence to support a party's opposition to summary judgment," *Doddy v. Oxy USA, Inc.*, 101 F.3d  448, 463 (5th Cir. 1996), when evidence "exists in the summary judgment record but

the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004). Therefore, to satisfy the requirement of *Celotex* that nonmovants "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex,* 477 U.S. at 324 (quoting FED. R. CIV. P. 56(e)), the party opposing the motion for summary judgment must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence supported their claim." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)(citing *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992)).

**III.    Title VII**

**A.    The *McDonnell-Douglas* Burden-Shifting Framework**

The initial burden in a Title VII discrimination claim is borne by the plaintiff. In order to meet that burden, the plaintiff may prove his claim "either through direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)." *Urbano v. Continental Airlines*, 138 F.3d 204, 206 (5th Cir. 1998). Reference to the *McDonnell Douglas* burden-shifting network is necessary when direct evidence of discriminatory intent is absent, as is typically the case. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). Where there is no direct evidence of discrimination, the plaintiff "must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000); *see also  Meinecke v. H.R. Block of Houston,* 66

F.3d 77, 83 (5th Cir. 1995). " 'To establish a prima facie case of discrimination, a plaintiff need only make a minimal showing'." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996)(quoting *Thornburg v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1989)).

Once a prima facie case has been established by the plaintiff, the burden shifts to the defendant to "rebut the presumption of discrimination by producing evidence . . . of a legitimate, nondiscriminatory" motive. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the "mandatory inference of discrimination" created by the prima facie case is rebutted; the burden returns to the plaintiff, who must demonstrate that the defendant's proffered reason for discrimination is a mere pretext. *McDonnell Douglas*, 411 U.S. at 804. In evaluating the plaintiff's attempt to meet his burden on the ultimate question, the factfinder, in addition to considering evidence that the employer's reasons were pretextual, "may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom[.]'" *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000)(quoting *Reeves.,* 530 U. at . 133)). Throughout the sequence of burden-shifting, however, the plaintiff retains the ultimate burden of persuasion. *Burdine*, 450 U.S. at 256.

**B.     Prima Facie Case**

Plaintiff in this instance has no direct evidence that establishes that he was discriminated against on account of his sex and must thus rely on the aforementioned *McDonnell Douglas* burden shifting framework to establish his claim. *McDonnell Douglas*, 411 U.S at 792. To establish his prima facie case of discrimination, Plaintiff must show that "(1) he belongs to a protected group; (2) he was qualified for the position sought; (3) he suffered an adverse employment action; and (4) he

was replaced by someone outside the protected class. *See Manning v. Chevron Chemical Co.*, 332 F.3d 874 (5th Cir. 2003)(citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

Plaintiff contends that he has met his prima facie burden because he has satisfactorily demonstrated that he is a male who was qualified for the position in question and was initially selected but was later de-selected and a woman was hired in his stead. Plaintiff contends that the evidence before the Court establishes that on the day of his interview, he was 'selected' for the position by Mr. Velez and thereafter was reassured by customs officials in Brazil and Washington, DC that the position was his. (Pl.'s Summ. J. Resp. Ex. 1 at 1, 3.) Plaintiff claims that his "selection" demonstrates that he was at the very least initially considered qualified for the position and this fact is further buttressed by the internal job announcement upon which he based his application which did not contain a statement of required qualifications. (Pl.'s Summ. J. Resp. Ex. 1 at 3.)

Defendant contends that Plaintiff has not and cannot establish his prima facie case of discrimination because Plaintiff cannot prove that he was qualified for the position he sought in the first place. *See Meister v. Texas Adjunct General's Dept*, 233 F.3d 332, 339 (5th Cir. 2000); *see also Haynes v. Pennzoil Co.* 207 F.3d 296, 300-01( 5th Cir. 2000). Defendant contends that Plaintiff was never qualified for the position because he was not in the same series as the position for which he applied. Defendant contends that because Plaintiff was not in the same series as the position for which he applied , a qualification evaluation was necessary. This objective evaluation revealed that Plaintiff lacked the proper qualifications. Defendant disputes the fact that Mr. Velez and

subsequently Mr. Lozarda offered the position to the Plaintiff since neither party was authorized to offer Plaintiff the position. [2] (Def.'s Summ. J. 3 n.4; *see also* Def.'s Summ. J. Reply Ex. A at 235.).

      Construing the evidence in the light most favorable to the Plaintiff, this Court agrees that Plaintiff has established his prima facie case. The Government concedes that Plaintiff established that he was in a protected class, that he was not hired and that a female was hired but vehemently maintains that Plaintiff lacked the qualifications to begin with. While this may very well be true, the evidence before the Court clearly shows that Plaintiff was selected for the position. (Def.'s Summ. J. Ex. G ; *see also* Pl.'s Summ. J. Resp. Ex. 1 at 1.) While Defendant maintains that "selection" in this instance meant Plaintiff was being passed on to the next step in the hiring process, selection in the ordinary sense of that word connoted an entirely different meaning to the Plaintiff. Plaintiff was interviewed by Mr. Velez and had no reason to doubt that Mr. Velez was inured with the power to make him an offer. Plaintiff initially and reasonably believed that the job was his. He was made an unconditional offer by individuals he reasonably believed were serving as Defendant's agents at the time, and as a result of those communications believed that he was qualified for the position. As a result, Plaintiff has established his prima facie case.

---

[2] The Government asserts and Plaintiff does not dispute or refute the fact that only the Assistant Commissioner of the Office of International Affairs, Foreign Operations Division has the authority to officially select applicants. (Def.'s Summ. J. Ex. H at 5.) Additionally, prior to the selection, customs Human Resources Management (hereinafter "HRM") must make a determination as to the applicants qualifications for the position before they can be selected. (Def.'s Summ. J. Ex. H at 1).

**C.      Pretext**

The burden now shifts to Defendant to "produc[e] evidence that [P]laintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Burdine*, supra, at 254. As already mentioned, this burden is one of production, not persuasion; it "can involve no credibility assessment." *St Mary's Honor Center*, supra, at 509. Defendant has offered summary judgment evidence that Plaintiff was not hired for the position because a review of his qualifications revealed that Plaintiff lacked the requisite experience or applicable substitutes for the position. (Def.Summ. J. Ex. H) Accordingly, "the *McDonnell Douglas* framework-with its presumptions and burdens"-disappears, and Plaintiff must prove that the employer's articulated reason was a pretext for unlawful discrimination. *Id*

Defendant has presented this Court with evidence that prior to officially hiring an individual for Foreign Operations, the normal hiring procedure involves and requires a qualification review by HRM, especially when that individual is classified under a different series than the position for which the individual applied. (Def.'s Summ. J. Ex. H at 1-2; *see also* Ex. I at 362-3.) Using the information provided by Plaintiff in his application, HRM engaged in a qualification review and concluded that Plaintiff lacked the "one year of specialized experience equivalent to the next lower grade level."(Def.'s Summ. J. Ex. H at 1-2; *see also* Ex. I at 362-3.)  Both HRM personnel that conducted the evaluation and review, concluded that Plaintiff did not meet one or more administrative functions such as : personnel, logistics, budget or management analysis and his application did not indicate that he possessed the requisite educational experience substitute. (Def.'s Summ. J. Ex. H at 1-2; *see also* Ex. I at 362-3.)

Plaintiff makes much of the fact that human resources did not notify him of these deficiencies and did not give him the opportunity to address these concerns. Plaintiff contends that this shows that the reason given is a pretext. However, the testimony of Doretta Davis-Clarke and Katya Bou-Sliman, Human Resources Management Specialists with HRM both reveal that HRM relies entirely on the statements and qualifications listed in the application materials of the applicant. (Def.'s Summ. J. Ex. J at 366-7; *see also* Pl.'s Summ. J. Resp. Ex. 2 at 152.) While HRM employees were not prohibited from contacting applicants, due to the shear volume of applications being received and reviewed, these specialist do not call back applicants to clarify points. (Def.'s Summ. J. Ex. G & Pl.'s Summ. J. Resp. Ex. 1 at 1.) The onus is placed on applicants to know the needed qualification for the position they are applying for and to address all of those requirements from the inception.

Plaintiff also argues that the non-discriminatory reason proffered by the Government, his deficient qualifications, was a pretext for discrimination because the original internal job announcement (Def.'s Summ. J. Ex. E) did not list any specific qualifications or minimum requirements. Additionally, Plaintiff claims that during his interview, Mr. Velez commented that generally, the retention rate for men in this administrative support position was low since men became easily bored and Plaintiff responded that he was well aware of the fact that the position was a "glorified secretarial position" but he was nevertheless interested in the position. Plaintiff infers a gender animus from this line of conversation and claims that he was not hired because he was a man. Plaintiff infers further gender animus and a preference for women from the fact that there were very few men in similar positions with CBP and mostly women occupied these positions.

While the internal announcement did not list any specific requirements or qualifications, the announcement specifically targeted customs employees interested in lateral reassignment to fill the position of Administrative Support Specialist GS-301-9 and asked interested lateral candidates to apply. *Random House Websters Unabridged Dictionary*, 1087 (2nd Edition) defines lateral as "pertaining to or entailing a position, . . . that is different but equivalent . . . in status, as distinguished from a promotion or demotion." As such, although the application did not spell out requirements, requirements were nevertheless implied by the term "lateral".[3] With regards to the inference of gender animus from his interview with Mr. Velez, Plaintiff contradicts himself. Initially, Plaintiff claims that Mr. Velez offered him the job. Now, when that job does not come to fruition, Plaintiff claims that from the very start, Mr. Velez exuded a preference for women with his comment. Nevertheless, since the "glorified secretary position" comment came from the Plaintiff, this comment lends nothing to the analysis of whether gender was a factor in this hiring decision. As to Plaintiff's claim that more women occupy these administrative support positions, while statistics may aid the Courts inquiry, statistical data in a vacuum, without more cannot and does not demonstrate discrimination. *See Odom v. Frank*, 3 F.3d 839, 849 (5 th Cir. 1993)

Plaintiff bears the burden of persuading this Court that Defendant's proffered reason is a pretext and must therefore offer some evidence to establish that the employer intentionally discriminated against him because of his gender. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Plaintiff has not met that burden and has not successfully rebutted the presumption attached to Defendant's articulated non-discriminatory reason.

---

[3] Superficially, Plaintiff's job title and classification as a customs inspector, Gs-1890-07, was not equivalent to an Administrative Support Specialist, GS-301-9.

### D.    Conclusion

For the enumerated reasons above, the Court finds that Plaintiff has not established that Defendant's decision to not follow through with his hiring was based on his gender. While the Court does believe that Defendant handled Plaintiff's application process poorly , Title VII, however, is not violated by the exercise of erroneous or illogical business judgment and discrimination laws are not vehicles for judicial second-guessing of business decisions. *Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5 th Cir. 1997). Defendant's Motion for Summary Judgment is hereby GRANTED and Plaintiff's claims are hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Done this 31st day in March 2006, in Laredo, Tx.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**To insure full notice, each party who receives this notice shall forward a copy of it to every other party and affected non-party even though they may have  been sent one by the Court.**